**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EVEREST INDEMNITY INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 25 C 5509** |
| **KATES DETECTIVE & SECURITY SERVICES AGENCY, INC., et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Everest Indemnity Insurance Co. has sued Kates Detective & Security Services Agency, Inc., the Chicago Housing Authority (CHA), and Christina Melendez, as the independent administrator of the estate of Jeramiah Pruckler, deceased, seeking a declaratory judgment that it is not obligated to defend or indemnify Kates or the CHA against the wrongful death lawsuit brought by Melendez. Everest has resolved its claims against Kates and Kates's counterclaims, and those claims and counterclaims have been dismissed. Everest has moved for summary judgment on the remaining claims and counterclaims. The CHA has not filed a response; Melendez has. For the reasons below, the Court grants Everest's motion for summary judgment.

**Background**

On August 30, 2022, Kates and the CHA entered into an agreement for Kates to provide security services to certain CHA office and residential locations (the Security

Services agreement). One of these buildings was an apartment complex located at 2920 South State Street, Chicago, Illinois (State Street Apartments). Among other provisions in the Security Services agreement, Kates agreed to "procure and maintain" certain types of insurance "in order to protect the [CHA] . . . against bodily injury or property damage claims which might arise from or in connection with services performed under" the agreement. Everest Ex. 5 at 46.[1] As relevant here, Kates was required to maintain "General Liability" coverage "for bodily injury, personal, and property damage" and "Professional Liability (E&O) insurance covering acts, errors, or omissions." *Id.* at 46–47.

Kates purchased a "Commercial General Liability Coverage" policy from Everest for the period from May 1, 2023 to May 1, 2024. Under that policy, Everest agreed to indemnify and defend Kates against lawsuits for "bodily injury" or "property damage" caused by an occurrence, subject to additional policy requirements and exclusions. Everest Ex. 1 at 13. As relevant here, the policy contained a Designated Operations Exclusion that excluded coverage for "bodily injury" or "property damage" arising out of operations involving "Government-owned housing, government-subsidized housing, or government-sponsored housing, including but not limited to housing made available under Section 8 of the Housing and Community Development Act of 1974." *Id.* at 61. The policy also included an Errors and Omissions Liability Endorsement (E&O Endorsement) that stated Everest would "pay those sums that the insured becomes legally obligated to pay . . . [that] results in a 'loss'" but expressly excluded "bodily injury" or "property damage" from the definition of "loss." *Id.* at 53. Finally, the policy provided

---

[1] Pincites for exhibits are based on ECF pagination.

an Additional Insured Endorsement that specified that any coverage for an organization that had "agreed in writing in a contract or agreement" with Kates to "be added as an additional insured" to the policy with Everest would "not be broader than the coverage provided within the terms of the Coverage Part." *Id.* at 34.

On November 7, 2023, Jeramiah Pruckler was shot and killed by a non-resident individual while standing in the lobby of the State Street Apartments. On May 1, 2025, Christina Melendez, as independent administrator of Pruckler's estate, filed a lawsuit in the Circuit Court of Cook County, Illinois (Melendez lawsuit) against Kates and the CHA for negligence, premises liability, and wrongful death. The Melendez complaint alleges that Kates and the CHA breached a duty to protect Pruckler by allowing the non-resident individual to enter the State Street Apartments with a gun.

On May 16, 2025, Everest filed this action seeking a declaratory judgment that it has no obligation to defend or indemnify Kates against the Melendez lawsuit. In August 2025, Everest filed an amended complaint to add the CHA as a defendant. Kates and the CHA both filed counterclaims seeking a declaratory judgment that the Everest policy covered Melendez's claims. As indicated earlier, Everest recently resolved its disputes with Kates, and those parties' claims and counterclaims against each other have been dismissed. The remaining claims are: (1) Everest's claim against the CHA; (2) Everest's claim against Melendez; and (3) the CHA's counterclaim against Everest.

**Discussion**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a movant must show that even after drawing

all reasonable inferences from the record in favor of the nonmoving party, a reasonable trier of fact could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In this case, the parties agree on the relevant facts. Their dispute solely concerns the meaning of several provisions of the insurance policy.[2] Under Illinois substantive law, which governs this diversity case, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008). Provisions that are interpreted to be illusory or ambiguous are resolved in favor of the insured. *Citizens Ins. Co. of Am. v. Wynndalco Enters., LLC*, 70 F.4th 987, 1004 (7th Cir. 2023). When construing an insurance policy, courts should be mindful of other interpretations of policy language that is identical or very similar to the policy language at issue. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 457 (5th Cir. 2022); *Haley v. Am. Int'l Life Assurance Co. of N.Y.*, 789 F. Supp. 260, 262–63 (N.D. Ill. 1992) ("we look to factually similar federal and state court cases to aid in our interpretation of the plain meaning of this policy term.").

Everest argues that the Designated Operations Exclusion is materially the same as the exclusion this Court interpreted to bar coverage for Kates's security guard operations in *Everest Indemnity Insurance Co. v. Kates Detective & Security Services Agency, Inc.*, No. 25 C 5488, 2026 WL 456346 (N.D. Ill. Feb. 18, 2026) (Apostol case). Melendez has not sought to rebut this contention or to distinguish the policy in this case

[2] To the extent the "facts" in Melendez's statement of additional facts are disputed by Everest, each of these disagreements involves interpretation of the insurance policy.

from the policy in the Apostol case.[3] Instead, Melendez puts forward two arguments that this Court already rejected in its decision in the Apostol case: (1) The Designated Operations Exclusion is ambiguous because it conflicts with the Policy's definition of "Insured Contract," and (2) the presence of the E&O coverage and Additional Insured provisions renders the Policy illusory. The Court again rejects both arguments.

**A. Conflict with "Insured Contract"**

In the Apostol case, the Court interpreted the Designated Operations Exclusion provision of a 2022 Everest policy issued to Kates. *Id.* at *2. That provision precluded coverage for "bodily injury" or "property damage" arising out of designated operations, including "any and all work involving low income housing, government-owned and/or subsidized housing, HUD housing, and Section 8 housing." *Id.* Because both parties agreed that the Apostol lawsuit was a claim for "bodily injury" and the events underlying the lawsuit took place at a CHA-owned apartment complex, the Court concluded that the Apostol case fell "squarely within the Designated Operations Exclusion." *Id.*

In holding that the Designated Operations Exclusion barred coverage, the Court in the Apostol case rejected the argument that the provision conflicted with the Policy's definition of "insured contract" as agreements pertaining to Kates's business "including an indemnification of a municipality in connection with work performed for a municipality," under which Kates assumes the tort liability of another party. *Id.* at *3. First, the Designated Operations Exclusion did not exclude all work performed at municipally-owned buildings but applied only to work involving government-owned

[3] The CHA did not file a response to Everest's motion. Kates did not file a response either, and as indicated earlier, Everest agreed to dismiss its claims against Kates with prejudice on October 1, 2026.

housing. *Id.* This left open all other “work performed for a municipality” that the Insured Contract provision could cover. *Id.* Second, the very purpose of an exclusion is to carve out some claims that otherwise would be covered. *Id.* "Conflict between coverage and exclusion provisions creates ambiguity only where the exclusion would swallow or nullify the purported coverage," and there was no such conflict in the Apostol case. *Id.* at *3–4.

The Designated Operations Exclusion in the Apostol case is nearly identical to the Designated Operations Exclusion in the present case. *Compare id.* at *2 (excluding "bodily injury . . . arising out of designated operations . . . involving government owned . . . housing") (cleaned up) *with* Everest Ex. 1 at 61 (excluding "bodily injury . . . arising out of . . . operations involving. . . government-owned housing") (cleaned up). Both provisions unambiguously exclude coverage for bodily injury arising out of operations involving government-owned housing. As in the Apostol case, Everest and Melendez agree that the Melendez lawsuit involves bodily injury and the State Street Apartments are government-owned. And instead of addressing the substantial similarities between the Melendez and Apostol lawsuits, Melendez attempts the same argument that this Court rejected in the Apostol case: that the Designated Operations Exclusion conflicts with the Policy's definition of "Insured Contract." As the Court previously ruled, this argument lacks merit. The definition of "Insured Contract" in the insurance policy at issue in the Apostol case is identical to the one in the Policy at issue here. *Compare Everest Indem. Ins. Co.*, 2026 WL 456346, at *3 *with* Everest Ex. 1 at 25. As Everest correctly points out, the Designated Operations Exclusion simply reduces, but does not eliminate, the scope of coverage available to Kates in connection with liability arising

from work performed for a municipality.

**B. E&O Coverage and Additional Insured provisions**

Melendez contends that the E&O Endorsement's exclusion of "bodily injury," "property damage," and other claims makes the provision illusory by completely removing the coverage the Policy provides for liability arising from the acts or omissions of the CHA as an additional insured party. Everest replies that this Court rejected the same argument in the Apostol case because there existed at least one E&O claim that was not excluded; Everest also notes that the CHA is subject to the same coverage exclusions as Kates.

A policy exclusion that knocks out parts of coverage in a policy without swallowing or nullifying the positive coverage is not ambiguous or illusory. *Off. of Special Deputy Receiver v. Hartford Fire Ins. Co.*, 178 F.4th 1091, 1097 (7th Cir. 2026). In fact, the very purpose of an exclusion is to narrow the scope of coverage. *Id.*

That is what the E&O Endorsement's exclusion served to do in the Apostol case. The E&O provision in the present case is identical and merely narrows the scope of coverage without eliminating it altogether. In the Apostol case, this Court identified at least one claim that would potentially be covered under the E&O Endorsement: alleged negligent security guard operations that cause a client to suffer business interruption and economic loss. *Everest Indem. Ins. Co.*, 2026 WL 456346, at *4. The same potential claim would be covered under the E&O Endorsement in the present case. Everest has also identified additional claims that Melendez does not dispute potentially would be covered via the E&O endorsement, including claims that allege: (1) improper training of guards that causes the client to incur costs for additional training, and (2)

failure to reasonably determine the number of guards necessary for crowd control at an event that causes the client's future revenues to decrease. The existence of these potential E&O claims signals that the exclusions do not swallow or nullify coverage. Just as this Court concluded in the Apostol case, the room for coverage under the E&O Endorsement demonstrates that the provision is neither illusory nor ambiguous.

Melendez also makes the same argument that this Court rejected in the Apostol case regarding CHA's status as an additional insured. In both cases, it is undisputed that the CHA is designated as an additional insured party to the Policy. And in both cases, it is undisputed that CHA's coverage as an additional insured is subject to the same exclusions and limitations that apply to Kates. *Id.* at *7. Thus the language from the Additional Insured Endorsement upon which Melendez relies defeats her contention that the E&O Endorsement and Additional Insured Endorsement cover the obligations Kates assumed through its contract with the CHA.

**Conclusion**

For the reasons stated above, the Court grants the plaintiff's motion for summary judgment [dkt. 55] and declares that Everest has no duty or obligation to defend or indemnify Kates and the CHA for the Melendez Lawsuit. The parties are directed to confer regarding appropriate language for a final judgment and are to submit by October 26, 2026 a status report with a proposal, and by that same date are to send a proposed form of judgment in Word format to Judge Kennelly's proposed order email address. A telephonic status hearing is set for October 29, 2026 at 8:50 a.m., using call-in number 650-479-3207, access code 2305-915-8729. The Court reserves the right to vacate the

status hearing if it determines a status hearing is not needed.

Date: October 22, 2026

MATTHEW F. KENNELLY
United States District Judge